**Ann P. BUETER, M.D., James F. Dupler, M.D., and Women's Health Partnership, Appellant–Defendants,**

v.

**Sandra BRINKMAN and Mark Brinkman, Appellee–Plaintiffs.**

No. 49A02–0111–CV–725.

Court of Appeals of Indiana.

Oct. 17, 2002.

Mary H. Watts, James P. Strenski, Candace L. Sage, Bingham McHale, Indianapolis, IN, Attorneys for Appellant.

Caroline A. Gilchrist, Baker & Gilchrist, Avon, IN, Attorney for Appellee.

**OPINION**

ROBB, Judge.

Ann P. Bueter, James F. Dupler, and The Women's Health Partnership (collectively referred to as "the doctors") appeal from the trial court's denial of their motion for preliminary determination of their statute of limitations affirmative defense to medical malpractice claims brought against them by Mark and Sandra Brinkman. We dismiss this appeal.

*Issues*

The doctors raise a sole issue for our review, which we restate as: whether the trial court properly denied the doctors' motion for preliminary determination. However, we find another issue dispositive: whether the trial court's denial was a final appealable order.

*Facts and Procedural History*

In May 1994, Sandra learned that she was pregnant and sought pre-natal care from the doctors. On January 22, 1995, Sandra was hospitalized with symptoms of what was later diagnosed as preeclampsia. On January 26, 1995, Sandra delivered her baby. Four days following delivery and after her discharge from the hospital, Sandra suffered two grand mal seizures and was taken to the hospital by ambulance. She was diagnosed with toxic eclampsia.

In March of 1995, the Brinkmans met with Bueter, and Bueter told them that it was not advisable for them to have more children because future pregnancies would be high risk with life-threatening complications for Sandra. Bueter recommended sterilization. Bueter also stated that until the Brinkmans complied with her advice, the doctors would not see Sandra as a patient and she would have to obtain her gynecological care elsewhere.

As a result of Bueter's advice, the Brinkmans decided not to have any more children, but for financial reasons opted not to undergo the sterilization procedure. In January of 2000, Sandra became pregnant despite the Brinkmans' use of birth control. On January 31, 2000, the Brinkmans met with physicians at St. Vincent Hospital in Indianapolis and were informed that Sandra had symptoms of preeclampsia when she was hospitalized in January 1995 prior to the birth of her child and that if she had received proper care at that time, it would not have progressed to toxic eclampsia. They were further in-

formed that there are numerous ways to treat preeclampsia and prevent it from progressing into eclampsia. Finally, they were informed that the risk of preeclampsia does not increase in subsequent pregnancies with the same father, that it does not always recur in subsequent pregnancies, and that if it does, it can be treated.

The Brinkmans then filed with the Department of Insurance a proposed complaint for medical malpractice against the doctors on December 7, 2000. The complaint alleged that the doctors committed malpractice in four respects:

1. Failing to identify and treat Sandra's prenatal signs of preeclampsia;

2. Failing to identify and treat Sandra's continuing signs of eclampsia after she delivered her child and negligently discharging her from the hospital while she still exhibited those signs;

3. Failing to diagnose and treat Sandra's signs of eclampsia after her discharge from the hospital; and

4. Failing to appropriately counsel the Brinkmans about the potential risks and complications for future pregnancies.

Appendix of Appellants at 16. On February 28, 2001, the doctors filed in the trial court a motion for preliminary determination pursuant to Indiana Code section 34–18–11–1(a), seeking dismissal of the Brinkmans' proposed complaint on the ground it was precluded by the statute of limitations. After a hearing, the trial court denied the doctors' motion. The doctors then simultaneously filed in this court a notice of appeal and in the trial court a petition to certify the order for interlocutory appeal. The trial court did certify its order, and the doctors then filed in this court under the cause number assigned when they filed their notice of appeal a motion to accept jurisdiction of the interlocutory appeal.

The motion to accept jurisdiction was denied on February 11, 2002. However, while the motion to accept jurisdiction had been pending, the doctors also filed a petition for extension of time to file the brief which would have been due pursuant to the notice of appeal seeking an extension of time until after this court ruled on the motion to accept jurisdiction and this petition was granted on February 25, 2002. Briefing was thereafter completed by both parties.

*Discussion and Decision*

I. Interlocutory v. Final Order

■ When the doctors filed their petition for extension of time to file their brief, they acknowledged that they had simultaneously initiated an appeal as if from a final order and a discretionary appeal from an interlocutory order. Our research reveals no cases which specifically state whether an order in an action for preliminary determination is interlocutory or final. However, there is language to suggest the order is an interlocutory one.

■ In a recent appeal from a trial court's denial of a motion for preliminary determination on the issue of the statute of limitations, this court stated that "[a] motion for preliminary determination, when accompanied by evidentiary matters, is akin to a motion for summary judgment...." *Jacobs v. Manhart,* 770 N.E.2d 344, 348 (Ind.Ct.App.2002). As a general rule, an order denying summary judgment is not a final appealable judgment. *Keith v. Mendus,* 661 N.E.2d 26, 35 (Ind.Ct.App. 1996), *trans. denied.* This is so "because no rights have been thereby foreclosed." *Loving v. Ponderosa Systems, Inc.,* 479 N.E.2d 531, 534 (Ind.1985). A final judgment "disposes of all issues as to all parties, to the full extent of the court to dispose of the same, and puts an end to

the particular case as to all of such parties and all of such issues." *Hudson v. Tyson,* 178 Ind.App. 376, 383 N.E.2d 66, 69 (1978) (quoting *State ex rel. Neal v. Hamilton Circuit Court,* 248 Ind. 130, 134, 224 N.E.2d 55, 57 (1967)). "A final judgment reserves no further question or direction for future determination." *Thompson v. Thompson,* 259 Ind. 266, 286 N.E.2d 657, 659 (1972). *See also* Ind. Appellate Rule 2(H)(1) ("A judgment is a final judgment if it disposes of all claims as to all parties....").

The disposition in this case was not final. Although the limited preliminary determination action in the trial court was concluded by the trial court's order, the medical malpractice action itself continues. The trial court's order on the doctors' motion for preliminary determination does not conclusively establish that the Brinkmans' complaint was filed within the statute of limitations; the doctors are not precluded from raising the statute of limitations as an affirmative defense when the case is taken up by the trial court after the medical review panel proceedings are concluded. Thus, we hold that the trial court's order was interlocutory. Our holding in this regard is bolstered by language in cases addressing denials of motions for preliminary determination which refer to the interlocutory nature of the appeal. *See Jacobs,* 770 N.E.2d at 346 ("Appellants ... bring this discretionary interlocutory appeal from the trial court's order against them on their motion for preliminary determination as to the medical malpractice statute of limitation.");

*Walters v. Rinker,* 520 N.E.2d 468, 469 (Ind.Ct.App.1988), *trans. denied* ("This is an interlocutory appeal from the denial of [the doctor's] motion for preliminary determination of his [statute of limitations] defense in a medical malpractice action....").

## II. Denial of Motion to Accept Jurisdiction

■ The doctors proceeded as they should have to seek the jurisdiction of this court. However, their motion for this court to entertain jurisdiction was denied. We have the authority to dismiss attempted appeals from interlocutory orders. *Huff v. House,* 452 N.E.2d 1015, 1016 (Ind. Ct.App.1983). This authority is tempered by Appellate Rule 66, which states:

> No appeal shall be dismissed as of right because the case was not finally disposed of in the trial court ... as to all issues and parties, but upon suggestion or discovery of such a situation, the Court may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the trial court....

App. R. 66(B). This court has noted that the previous version of this rule, old Appellate Rule 4(E),[1] was "utilized as a 'rescue' provision to avoid waste of time, energy and judicial resources where it is discovered after briefing that a deficiency to appealability exists." *INB Nat. Bank v. 1 st Source Bank,* 567 N.E.2d 1200, 1201

---

1. Old Appellate Rule 4(E) read as follows:
   No appeal will be dismissed as of right because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a situation the appellate tribunal may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the court below.

   Thus, the substance of the old and new rule regarding dismissal of appeals is substantially the same.

(Ind.Ct.App.1991). The court went on to note that, in general, interlocutory orders not appealable by right are not appealable at all in the absence of the certification of both the trial and appellate court. *Id.* at 1202.

■ We acknowledge that confusion may have been engendered by this court's order granting an extension of time following denial of the motion to accept jurisdiction, and we further acknowledge that the parties have gone to the time and expense of preparing briefs on the merits of this case. However, this is not a case in which the "deficiency to appealability" was discovered *after* the briefs were filed. The doctors acknowledged prior to briefing the potential interlocutory nature of their appeal. The cases we have cited herein unequivocally refer to the interlocutory nature of such an order. We do not think it appropriate to allow the parties to "hedge their bets" and pursue simultaneous but alternate tracks for appealing an order. When this court denied the motion to accept jurisdiction without comment, the appeal was concluded. We therefore dismiss this purported appeal.

### Conclusion

Because the trial court's order was an interlocutory order and because this court declined to accept jurisdiction of the interlocutory appeal, we dismiss this appeal.

Dismissed.

RILEY, J., and MATTINGLY–MAY, J., concur.